UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**CEDRICK HOOD**,                        Case No. 3:15-CV-00187

        Plaintiff,                     Magistrate Judge James R. Knepp, II

      v.                                    MEMORANDUM OPINION AND ORDER

**COMMISSIONER OF SOCIAL SECURITY**,

        Defendant.

### INTRODUCTION

Plaintiff Cedrick Hood ("Plaintiff"), appeals the administrative decision denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The district court has jurisdiction over this case under 42 U.S.C. § 405(g). The parties consented to the exercise of jurisdiction by the undersigned in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 14). For the reasons below, the Court affirms the Commissioner's decision denying benefits.

### PROCEDURAL BACKGROUND

Plaintiff filed for DIB and SSI on September 21, 2011, alleging a disability onset date of June 26, 2011. (Tr. 26, 98, 110, 124, 138, 229-41). Plaintiff asserts he is disabled due to multiple fractures and residual osteoarthritis from a remote motor vehicle accident, bilateral knee osteoarthritis, mild chronic obstructive pulmonary disease ("COPD"), C5-6 spondylosis, left shoulder osteoarthritis, obesity, mild L5-S1 narrowing, antisocial personality disorder, and polysubstance abuse. (Tr. 26). His claim was denied initially and on reconsideration. (Tr. 23, 169-82). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 183-86, 197-209). Plaintiff appeared with counsel and testified at a hearing before the ALJ on July 30,

2013, in Toledo, Ohio. (Tr. 23, 40-73). On August 20, 2013, the ALJ issued a written decision denying Plaintiff's claim. (Tr. 16-34). The ALJ found Plaintiff was not entitled to benefits because he had the functional capacity to perform sedentary work with additional non-exertional limitations. (Tr. 23, 29, 33-34). The ALJ made this determination after reviewing the entire record in conjunction with an ALJ's residual functional capacity finding from a prior DIB claim filed by the Plaintiff. (Tr. 23, 33-34).

Plaintiff filed the prior application for DIB on November 18, 2008, alleging a disability onset date of January 15, 2004. (Tr. 23, 77). The ALJ denied the prior application for DIB on June 22, 2011. (Tr. 23, 74-90). The disabilities alleged and reviewed in the prior claim were: status post remote motor vehicle accident with multiple fractures and residual osteoarthritis; bilateral knee osteoarthritis; mild COPD; C5-6 spondylosis; left shoulder osteoarthritis; obesity; antisocial personality disorder; polysubstance abuse; and mild L5-S1 narrowing. (Tr. 80, 84). Plaintiff did not seek judicial review of the prior claim denied on June 22, 2011. (Tr. 19). Plaintiff instead filed a second DIB claim presently at issue before the Court. (Tr. 14, 16-34).

**FACTUAL BACKGROUND**

Physical Medical History

Since a car accident in 1998, Plaintiff has suffered physical pain in his back, knees, and shoulders. (Tr. 23, 384, 412). Plaintiff first applied for disability insurance benefits in 2005 and repeatedly reapplied after being denied benefits. (Tr. 99, 111, 125, 139). Plaintiff challenges only the ALJ's assessment of his mental health, so this opinion will not address the evidence related to physical impairments. (Tr. 363-73).

Mental Health Medical History

On March 3, 2010, Plaintiff began treatment at the Zepf Community Mental Health

2

Center. (Tr. 375-83). Plaintiff initially reported symptoms of depression, anxiety, traumatic stress, anger/aggression, inattention, impulsivity, mood swings/hyperactivity, sleep problems, and psychological stressors. (Tr. 380). In the initial assessment by the social worker, Plaintiff was diagnosed with Major Depressive Disorder, recurrent moderate, and was assessed a Global Assessment Functioning ("GAF") score of 60.[1]

During 2010 and 2011, Plaintiff received treatment from Drs. Joy Price and Nagaveni Ragothaman. (Tr. 384, 386). On January 12, 2011, Dr. Price remarked Plaintiff had an improved affect and his mood was calmer and less anxious. (Tr. 412-13). Dr. Price diagnosed Plaintiff with Antisocial Personality Disorder. (Tr. 412-13). On January 14, 2011, Plaintiff was transferred to Dr. Ragothaman's care. (Tr. 411). Plaintiff met with Dr. Ragothaman only once before transferring to Dr. Ong Hong, M.D., in March 2011. (Tr. 384). At different times, Plaintiff had been prescribed Lexapro, Celexa, and Trazadone, and was taking Remeron when transferred to Dr. Hong. (Tr. 384).

Dr. Hong's initial assessment of Plaintiff took place March 23, 2011. (Tr. 384-85, 402-03). Of the five appointments scheduled before meeting with Dr. Hong, Plaintiff missed the first four. (Tr. 405-10). During this initial appointment with Dr. Hong, Plaintiff was irritable and anxious, and he expressed feelings of depression with helplessness and worthlessness, low energy and interest levels, and also expressed feelings of paranoia. (Tr. 385, 402-03). Dr. Hong observed Plaintiff was appropriately groomed, cooperative, and demonstrated fair eye contact. (Tr. 385, 403). Plaintiff's speech was fluent and spontaneous and had no looseness of associations, no flight of ideas, and no pressured speech. (Tr. 385, 403). Dr. Hong noted Plaintiff

---

1. A GAF between 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed., text rev. 2000) ("DSM-IV-TR").

3

exhibited some insight and fair judgment, but his attention and concentration were poor. (Tr. 385, 403). Plaintiff's affect was constricted, he exhibited persecutory delusions, and had auditory hallucinations. (Tr. 403). Dr. Hong assessed a GAF score of 55 and diagnosed Plaintiff with both depressive disorder and antisocial personality disorder; he prescribed a low dosage of Abilify. (Tr. 385, 403); *see* DSM-IV-TR at 34.

In a nursing assessment conducted on April 5, 2011, after a change in Plaintiff's medications, Plaintiff expressed a depressed and irritable mood, but the nurse noted Plaintiff was alert and oriented, had good eye contact, good hygiene, had full affect and clear speech, and had goal-directed thoughts. (Tr. 401). Plaintiff denied hallucinations. (Tr. 401).

At his next appointment with Dr. Hong on April 20, 2011, Plaintiff reported his mood had remained stable, though he had good and bad days. (Tr. 399). He also reported moving into an apartment and having a friend visit sometimes. (Tr. 399). Plaintiff's mental status remained relatively unchanged. (Tr. 400). Dr. Hong observed Plaintiff was appropriately dressed, cooperative, with fair eye contact, and fluent speech. (Tr. 400). His mood was depressed, anxious, and irritable with constricted affect. (Tr. 400). Dr. Hong recorded Plaintiff experienced persecutory delusions and hallucinations. (Tr. 400).

On June 8, 2011, Plaintiff related to Dr. Hong that he had been managing his "daily routines and stresses." (Tr. 397). Dr. Hong increased Plaintiff's dosage of Abilify. (Tr. 397). Plaintiff reported he stayed at home much of the time and tried to keep to himself. (Tr. 397). Again, Dr. Hong's mental health status exam findings remained unchanged, including his diagnosis, though Plaintiff's mood was not irritable. (Tr. 398).

Plaintiff cancelled or failed to appear for his next four appointments. (Tr. 393-96). On August 18, 2011, Plaintiff met with the nursing staff for a medication follow up and refill. (Tr.

392). The nurse recorded Plaintiff's general appearance as alert and oriented with good hygiene and eye contact. (Tr. 392). Plaintiff's mood was irritable and "not good," but he denied any hallucinations. (Tr. 392).

Plaintiff again missed two appointments. (Tr. 390-91). On October 14, 2011, the nurse reported Plaintiff had not seen Dr. Hong since June 8, 2011. (Tr. 389). He recorded Plaintiff was alert and oriented, had good hygiene, and good eye contact. (Tr. 389). Plaintiff's mood was depressed and anxious, and he expressed paranoia but denied any hallucinations. (Tr. 389). Plaintiff demonstrated full affect with clear speech and goal-directed thought. (Tr. 389).

Plaintiff was again examined by Dr. Hong on November 9, 2011. (Tr. 387). Plaintiff reported he had been unable to keep appointments due to the stresses he was experiencing, including legal and financial pressures. (Tr. 387). The only notable changes in his mental health status included denial of persecutory delusions, fair eye contact, and constricted affect. (Tr. 388). Plaintiff's diagnosis remained unchanged. (Tr. 388).

In January 2012, Plaintiff missed an appointment with Dr. Hong. (Tr. 435). Six days later, Plaintiff returned to refill his medications. (Tr. 434). The nurse recorded Plaintiff's alert and oriented general appearance and good hygiene and good eye contact. (Tr. 434). He also noted Plaintiff's depressed, anxious, and irritable mood, though Plaintiff spoke with clear speech, with goal-directed thought, and had a full affect. (Tr. 434). Plaintiff denied hallucinations but reported his concentration had not been good. (Tr. 434). Plaintiff again missed appointments on February 22 and May 1, 2012. (Tr. 432).

On June 6, 2012, Plaintiff had a short appointment with Dr. Hong to refill Plaintiff's prescriptions for Celexa, Abilify, and Trazadone. (Tr. 599). Dr. Hong reported Plaintiff had been without his psychotropic medications for two to three months because Plaintiff did not keep his

appointments. (Tr. 597). Plaintiff reported feeling frustrated, anxious, and restless. (Tr. 597). Plaintiff also reported auditory hallucinations. (Tr. 597). Plaintiff remarked he was unsure whether his meds helped him or not, but he felt the need for them. (Tr. 597). Dr. Hong noted Plaintiff's appropriate dress and cooperative demeanor. (Tr. 598). Plaintiff exhibited fair eye contact and fluent speech, as well as a constricted affect and depressed, irritable, and anxious mood. (Tr. 598). Dr. Hong reported Plaintiff denied delusions. (Tr. 598).

Two weeks later, Plaintiff had a follow up appointment with the nursing staff regarding the change in Plaintiff's medications. (Tr. 596). A nurse recorded Plaintiff's symptoms, which included alert and oriented general appearance, auditory hallucinations, and paranoia. (Tr. 596).

On July 18, 2012, Plaintiff again had a follow up appointment with the nursing staff regarding his medications. (Tr. 594). Plaintiff's mood was depressed, anxious, and irritable but he was alert and oriented with good hygiene and eye contact, full affect, and clear speech with goal-directed thought. (Tr. 594). Plaintiff still had auditory hallucinations. (Tr. 594).

Plaintiff missed or cancelled a few appointments in August 2012. (Tr. 591-93). At Plaintiff's September 4, 2012, appointment, his symptoms were unchanged from July, but Plaintiff specifically remarked that his concentration had been poor. (Tr. 588-89). Two weeks later, he reported no changes except a lack of anxiety, mild hallucinations, and his poor concentration. (Tr. 587).

On October 10, 2012, Plaintiff remarked he was still feeling depressed and at times felt paranoid. (Tr. 585). Dr. Hong observed Plaintiff's mood was depressed and irritable, and he was experiencing persecutory delusions and auditory hallucinations. (Tr. 586). Three weeks later, the nurse recorded Plaintiff's mood as anxious, but not depressed or irritable although he was still experiencing auditory hallucinations. (Tr. 584). At this appointment, Dr. Hong ruled out major

6

depression with psychotic features, a change from his prior diagnosis. (Tr. 586).

Plaintiff missed two appointments in November 2012, but had prescriptions refilled November 29, 2012. (Tr. 581-83). On December 20, 2012, Plaintiff had a follow up appointment with the nursing staff where Plaintiff stated he complied with his medications and that some days were better than others. (Tr. 580). Plaintiff was alert and oriented, had good hygiene and eye contact, constricted affect, and clear speech. (Tr. 580). Plaintiff denied hallucinations but was still experiencing paranoia, though he refused to increase or change his medications. (Tr. 580). The nurse noted Plaintiff seemed more irritable than usual but his mood was euthymic. (Tr. 580). Plaintiff also complained of low energy and motivation, as well as poor concentration. (Tr. 580).

On January 25, 2013, Plaintiff was hospitalized for four days for mycoplasma pneumonia and non-ST elevation myocardial infarction secondary to cocaine abuse. (Tr. 451-52, 495). Plaintiff had two medication follow-up appointments with the nursing staff on February 8, 2013, and March 6, 2013. (Tr. 556-57). Plaintiff then missed two appointments in late March. (Tr. 554-55).

In April 2013, Plaintiff reported panicked feelings after one week without medications and the recent death of his mother. (Tr. 553). Plaintiff's mental status findings remained relatively stable, except he reported depressed mood, was still reporting auditory hallucinations, and he demonstrated flat affect. (Tr. 553). Dr. Hong adjusted Plaintiff's medications. (Tr. 552).

At a May 14, 2013, appointment with Dr. Hong, Plaintiff reported he had been taking his medications as prescribed, but he still felt depressed, irritable, and, at times, anxious. (Tr. 548-49, 576-77). He reported auditory hallucinations, but stated they were not commanding. (Tr. 548, 576). Dr. Hong noted Plaintiff was appropriately dressed, had good eye contact, and good hygiene. (Tr. 549, 577). Plaintiff's speech was fluent, though his affect was constricted. (Tr. 549,

7

577). Plaintiff was alert and oriented with organized thought and fair judgment and insight. (Tr. 549, 577). Dr. Hong again ruled out major depression with psychotic features and did not report the diagnosis of antisocial personality disorder. (Tr. 549, 577).

Thereafter, Plaintiff had a medication management visit on June 11, 2013, and met with Dr. Hong on July 9, 2013. (Tr. 572-73, 575). In June, the nurse found Plaintiff was alert and oriented with good hygiene and eye contact. (Tr. 575). Plaintiff's hallucinations appeared "no different." (Tr. 575). In July, Plaintiff reported feeling paranoid and hearing voices. (Tr. 572). He also reported feeling irritable, anxious, and feeling helpless at times. (Tr. 572). He said he was taking his medications as prescribed, but he was not taking his blood pressure or blood sugar medications because he lacked medical coverage. (Tr. 572). Plaintiff's symptoms – feeling depressed, anxious, and irritated at times, constricted affect, persecutory delusions, and auditory hallucinations – were consistent with those of earlier appointments. (Tr. 573). Dr. Hong again ruled out major depression with psychotic features. (Tr. 573).

Opinion Evidence

After meeting with Plaintiff only four times in one year, Dr. Hong completed his first Mental Status Questionnaire on January 4, 2012. (Tr. 425-27). Dr. Hong remarked on Plaintiff's mental status, including his appropriate appearance, spontaneous speech, dysphoric mood, feelings of helplessness and worthlessness, some insight, and fair judgment. (Tr. 425). Dr. Hong reported Plaintiff was feeling tense and anxious around people and had continued paranoia. (Tr. 425). Dr. Hong noted Plaintiff's social interaction deficiencies and described Plaintiff as withdrawn and guarded with poor adaptation. (Tr. 426).

In the Questionnaire, Dr. Hong opined Plaintiff had poor attention and concentration, forgetfulness, and low-average intelligence. (Tr. 425). Additionally, Dr. Hong opined Plaintiff

was able to remember, understand, and follow simple directions though he was unable to maintain attention. (Tr. 426). Dr. Hong described Plaintiff's ability to persist at tasks and to timely complete those tasks as poor. (Tr. 426). He opined Plaintiff would react poorly to pressures involving even simple and routine or repetitive tasks, either in the workplace or elsewhere. (Tr. 426).

On May 2, 2012, Dr. Hong completed his second Mental Status Questionnaire. (Tr. 437-39). This Questionnaire remained unchanged since the January assessment. (Tr. 437-39).

A year later in May 2013, Dr. Hong completed another Mental Impairment Questionnaire. (Tr. 558-63). Dr. Hong restated the diagnosis of depressive disorder, but ruled out the diagnoses of both major depression, recurrent with psychotic features, and antisocial personality disorder. (Tr. 558). Dr. Hong assessed a GAF score of 50, which indicates serious symptoms or a serious impairment in social, occupational, or school functioning. (Tr. 558); DSM-IV-TR at 34. His clinical findings included depressed mood, anxiety, episodic panic attacks, paranoid ideas, auditory hallucinations, and poor attention and concentration, all of which are chronic in nature. (Tr. 558).

Dr. Hong opined Plaintiff had limited but satisfactory abilities to remember work-like procedures; understand, remember, and carry out very short and simple instructions; sustain an ordinary routine without special supervision; make simple work-related decisions; ask simple questions or request assistance; and be aware of normal hazards and take appropriate precautions. (Tr. 560). Dr. Hong also opined Plaintiff had seriously limited abilities to maintain attention for two hour segments; perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting

9

behavior extremes; respond appropriately to changes in a routine work setting; and deal with normal work stress. (Tr. 560). In three categories–maintain regular attendance and be punctual; work in coordination with or proximity to others without being unduly distracted; and complete a normal workday and workweek without interruptions from psychologically based symptoms – Dr. Hong opined Plaintiff's abilities were unable to meet competitive standards. (Tr. 560).

Dr. Hong recorded Plaintiff would be seriously limited or unable to meet competitive standards in relation to semiskilled and skilled work. (Tr. 561). He explained Plaintiff's more limited abilities because of poor attention and concentration, poor frustration tolerance, marked anxiety, and paranoid ideas. (Tr. 561). Dr. Hong reported Plaintiff's psychiatric condition exacerbated pain or other physical symptoms because he often did not comply with medical treatment. (Tr. 561). Dr. Hong further opined Plaintiff had moderate restrictions of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; and three episodes of decompensation within a twelve-month period. (Tr. 562). Dr. Hong also indicated Plaintiff, on average, would be absent from work more than four days per month because of his impairments. (Tr. 563).

State Agency Opinions

On November 18, 2011, Dr. Cynthia Waggoner, Psy.D., a member of the state agency charged with evaluating disability requests, reviewed the record for a Disability Determination Explanation. (Tr. 99-108). The evidence on which Dr. Waggoner based her determinations was dated through November 11, 2011. (Tr. 100). Dr. Waggoner adopted the ALJ's determination of June 22, 2011, which stated "simple routine tasks with limited interactions with others and low production demands." (Tr. 101). Specifically, Dr. Waggoner remarked Plaintiff had been seen by doctors at the Zepf Center sporadically and missed several appointments because he claimed he

was too depressed and stressed. (Tr. 101). She opined Plaintiff had mild restrictions of activities of daily living, exhibited moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and had no repeated episodes of decompensation. (Tr. 102).

On April 12, 2012, Dr. Caroline Lewin, Ph.D., conducted another Disability Determination Evaluation. (Tr. 124-37). Dr. Lewin opined the level of restriction on Plaintiff's daily living was mild and that Plaintiff experienced moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace. (Tr. 131). Dr. Lewin went on to state Plaintiff's statements regarding the severity and limiting effects of his symptoms were not credible because they were inconsistent with the records. (Tr. 132). Dr. Lewin adopted the RFC opinion of the June 22, 2011, ALJ decision and concurred with her colleague Dr. Waggoner. (Tr. 132-35).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health and Human Servs.,* 889 F.2d 679, 681 (6th Cir. 1989)). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial

evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

### STANDARD FOR DISABILITY

Eligibility for DIB and SSI is predicated on the existence of a disability. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. §§ 404.1520 and 416.920 – to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering his residual functional capacity ("RFC"), age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC to perform available work in the national economy. *Id*. The court considers the claimant's RFC, age, education, and past work experience to determine if the claimant could perform other work. *Id*. Only if a claimant satisfies each

element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) and 416.920(b)-(f); *see also Walters* at 529.

## DISCUSSION

Plaintiff asserts two arguments challenging the ALJ's decision:

1. Whether the administrative law judge erred in applying *Drummond* despite new and material evidence, including treatment records and a report from the long-term treating psychiatrist documenting greater limitations than found by the decision; and

2. Whether the administrative law judge erred in her evaluation of the treating psychiatrist opinion where she failed to evaluate this opinion under the Social Security's own rules and regulations?

(Doc. 16, at 1).

The Court will first discuss the weight given to Dr. Hong, Plaintiff's treating psychiatrist, and then proceed with an analysis of the evidence in support of the RFC.

### *Treating Physician*

An ALJ must weigh medical opinions in the record based on certain enumerated factors. 20 C.F.R. § 404.1527(c). The ALJ considers: (1) the examining relationship; (2) the treatment relationship, which includes length of treating relationship and the frequency of examination and the nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors. *Id.*

Generally, greater deference is afforded to the opinions of treating physicians than to opinions of non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996). This higher level of deference is given to a treating physician's opinion because "medical professionals [are] most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique

perspective to the medical evidence that cannot be obtained from the objective medical findings alone." 20 C.F.R. § 404.1527(c)(2); *see also* 20 C.F.R. § 416.927(c)(2). A treating physician's opinion is given "controlling weight" if supported by "'medically acceptable clinical laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(c)).

Even if the treating physician's opinion is not entitled to "controlling weight," there is nevertheless a rebuttable presumption that it deserves "great deference" from the ALJ. *Rogers* at 242. Importantly, an ALJ's failure to give "good reasons" for according less than controlling weight to treating source opinion requires reversal and remand, unless the error is a harmless procedural violation. *Blakeley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009).

Plaintiff argues the ALJ erred in her decision because she did not give proper controlling weight to Dr. Hong's opinion as required by Social Security Administration rules and regulations. Plaintiff argues more preference, or at least deference, should have been given to Dr. Hong's opinion. However, it is important to note the ALJ gave great weight to the majority of Dr. Hong's opinion and the RFC reflected restrictions in Plaintiff's concentration and social functioning by limiting him to simple, non-paced work with only occasional social interaction. (Tr. 30). The ALJ only reduced the weight given to the limitations related to Plaintiff's ability to complete tasks timely, maintain attention, and regularly attend work. (Tr. 30). The ALJ gave little weight to these limitations because they were inconsistent and unsupported by Dr. Hong's treatment records which repeatedly showed Plaintiff was organized, goal-directed, and had fair judgment. (Tr. 30).

Plaintiff argues the ALJ did not provide a reason, other than inconsistency, for according

14

Dr. Hong's opinion less than controlling weight. (Doc. 16, at 21). Contrary to Plaintiff's assertion, controlling weight is given where the treating source opinion is not inconsistent with the substantial evidence in the record. *Wilson*, 378 F.3d at 544. Inconsistency is a valid reason, and is in fact, integral to a finding of less than controlling weight. 20 C.F.R. § 404.1527(c)(4), (d)(2). Here, the ALJ discussed and provided citation to inconsistent evidence which undermined the weight of Dr. Hong's opinion.

Specifically, the ALJ remarked on the inconsistency within Dr. Hong's treatment notes and Plaintiff's actions. (Tr. 29-30). The ALJ found that over a more than two-year treatment history, Dr. Hong's notes had consistently found Plaintiff to have goal-directed thoughts, fair judgment, and oriented demeanor. (Tr. 388, 389, 397, 398, 400, 401, 403, 434, 549, 580, 594). These are certainly characteristics that belie an inability to perform simple, non-paced work. While elsewhere in the record, Plaintiff reported poor concentration (Tr. 434, 580, 558, 587-89), this is adequately accounted for in the mental RFC's restriction to no production quota work. Additionally, the GAF scores in Dr. Hong's notes (ranging from 50-60) indicate abilities that are not preclusive of work, especially when taken in conjunction with the lack of variability in Plaintiff's symptoms. (Tr. 30-31, 380, 403, 558). Next, Dr. Hong's opinion contains the statement that Plaintiff had experienced three episodes of decompensation. (Tr. 25, 562). However, Plaintiff had never been psychiatrically hospitalized nor is there any evidence of increased severity of symptoms, such that this conclusion by Dr. Hong is completely unsupported by the record evidence.

Further, Plaintiff's own actions do not support the severity of restrictions Dr. Hong opined. Plaintiff did not comply with treatment recommendations of his medical care providers; at multiple times Plaintiff refused to increase his medications or participate in therapy to relieve

15

his symptoms. (Tr. 29, 388, 392, 580). Plaintiff also consistently missed appointments (Tr. 29, 390-93, 405-10, 432, 435, 554-55, 581-82) but always attended appointments when he needed a refill of his medications (Tr. 392, 434, 583, 599). The ALJ found these actions to undermine the severity of Plaintiff's reported condition; first, because he refused more intense treatment and second, because he was responsible enough to appear for appointments when he needed medication. (Tr. 29). It necessarily follows that a doctor's opinion, particularly a psychiatrist's, which relies on the subjective complaints of the patient, could be adversely affected by a plaintiff's diminished credibility.

The ALJ's decision to accord little weight to Dr. Hong's opinion is supportable because it is inconsistent with the evidence in the record. *Wilson*, 378 F.3d at 544. *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009) (finding an ALJ's reasons for discounting a treating physician may be brief). Although, the ALJ did not specifically label his discussion of the evidence as good reasons, his analysis provided the necessary reasoning. *See Dunlap v. Comm'r of Soc. Sec.*, 509 F.App'x 472, 476 (6th Cir. 2012); *Daily v. Colvin*, 2014 U.S. Dist. LEXIS 82267, at *23 (N.D. Ohio).

*RFC Finding and Drummond Analysis*

Prior decisions of the Commissioner which are not appealed are binding on a claimant and the Commissioner. *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 841 (6th Cir. 1997). In *Drummond*, the Sixth Circuit held that the Commissioner is bound by its prior findings with regard to a claimant's RFC unless new evidence or changed circumstances require a different finding. *Id.* at 842. Social Security Ruling 98-4(6) therefore mandates:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the

> unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

SSR 98-4(6), 1998 WL 283902, at *3.

It is the Plaintiff's burden to show that circumstances have changed since the prior ALJ's decision "by presenting new and material evidence of deterioration." *Drogowski v. Comm'r of Soc. Sec.*, 2011 WL 4502988, at *8 (E.D. Mich. July 12, 2011) *report and recommendation adopted*, 2011 WL 4502955 (E.D. Mich. Sept. 28, 2011). Such evidence is new only if it was "not in existence or available to the claimant at the time of the [prior] administrative proceeding." *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990). Such evidence is "material" only if there is "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988).

The following relevant conditions were considered and reviewed in both Plaintiff's claims: chronic anxiety, depression, and antisocial personality disorder. (Tr. 26-36).

The ALJ's conclusion that the evidence "fails to corroborate the severity of the claimant's subjective complaints" is supported by substantial evidence in the record because the evidence presented by Plaintiff is not both "new and material". (Tr. 31). The evidence brought forth by Plaintiff is not persuasive of an altered condition. Rather, substantial evidence in the record shows "a reasonable probability" the Commissioner would have reached the same conclusion even considering the new evidence. *Sizemore*, 865 F.2d at 711.

*Mental Impairments*

Plaintiff argues the additional mental health records accumulated since the prior decision are both new and material such that this ALJ misapplied *Drummond*. However, there is

17

substantial evidence in the record supporting the ALJ's mental RFC determination (which is the same as the prior determination) and thus, *Drummond* was properly applied. (Tr. 26, 84).

Under *Drummond*, the former decision of the ALJ is binding unless new evidence reflects changed circumstances. The documents do not demonstrate a material change of Plaintiff's mental health occurred. To the contrary, Plaintiff's symptoms improved, or at the very least did not worsen, under Dr. Hong's care and Plaintiff concedes as much. During his treatment of Plaintiff, Dr. Hong no longer diagnosed either antisocial personality disorder or Major Depression, both former diagnoses. (Tr. 558, 577). The prior ALJ decision was reflective of moderate impairments in social functioning, concentration, and ability to handle stress; the same impairments accommodated in the current RFC. (Tr. 86-87).

Furthermore, substantial evidence supports the mental RFC. For example, Plaintiff's depressive condition was stable and managed with medication and his mood remained consistent throughout treatment. (Tr. 384-89, 392, 397-404, 434, 548-50, 553, 572-73, 576-77, 580, 584-88, 594, 596-98). Dr. Hong's records indicate Plaintiff consistently refilled his prescriptions. (Tr. 384-89, 392, 397-404, 407, 413, 434, 548-550, 552-53, 556-57, 572-73, 575-77, 579-81, 584-90, 594-99). The record also demonstrates Plaintiff's capacity for limited, positive social interaction. Plaintiff regularly attended Alcoholics Anonymous meetings and his physical appearance was good. (Tr. 384-89, 392, 397-404, 434, 549, 553, 573, 575, 577, 580, 584, 586, 594, 596-98). Plaintiff responded to questions well, was repeatedly noted to be cooperative, and maintained good eye contact during his evaluations and appointments. (Tr. 384-89, 392, 397-404, 434, 549, 553, 573, 575, 577, 580, 584, 586, 594, 596-98). Plaintiff was also consistently found to have goal-directed thoughts, fair judgment, and oriented demeanor. (Tr. 388, 389, 397, 398, 400, 401, 403, 434, 549, 580, 594). These citations support the limitations provided in Plaintiff's mental

RFC.

The evidence cited above demonstrates Plaintiff's ability to perform a limited range of work where he is capable of understanding and remembering simple instructions, sustaining concentration for simple, routine work duties, and occasionally interacting with others. (Tr. 26). Throughout the record, Plaintiff's condition either remained the same or improved under Dr. Hong's treatment. Here, the evidence does not require a different finding than that of the prior ALJ because the new evidence did not rise to the level of being material. *Drummond*, 126 F.3d at 842. The ALJ's decision must be affirmed because there is substantial evidence to support the RFC determination and, under *Drummond*, the prior ALJ's decision is binding. 126 F.3d at 842.

## CONCLUSION

Following review of the arguments presented, the record, and applicable law, the Court finds the ALJ's decision denying DIB benefits supported by substantial evidence. Therefore, the Court affirms the Commissioner's decision denying benefits.

S/ James R. Knepp, II
United States Magistrate Judge